**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **19-CR-00358 (RC)** |
| | : | |
| **DEMONTRA HARRIS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E), 18 U.S.C. § 3142 (d)(1)(A)(iii), and 18 U.S.C. § 3142 (f)(2)(B) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**Introduction**

    Demontra Harris is a twenty-five year old male who has a significant criminal history involving the possession of unlawful firearms. More concerning, however, is that the defendant not only possesses firearms as a prohibited person, but that he is using the firearms in violent, threatening conduct. Additionally, Defendant Harris has been charged with possessing a firearm and ammunition while on supervision for a firearms charge in D.C. Superior Court (his supervision began on March 11, 2019, and yet he is again in possession of a firearm less than 5 months after that supervision commenced). Since being placed on supervised probation, the defendant is now

1

charged with possessing a firearm with an extended magazine on two separate occasions (July 24, 2019, and July 26, 2019). A grand jury returned a three-count indictment on October 23, 2019, charging the defendant with two counts of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1), and one count of Witness Tampering, in violation of Title 18 U.S.C. § 1512(b)(1).

Defendant received a suspended sentence in his D.C. Superior Court case; however, *less than 5 months after* being sentenced for Carrying a Pistol without a License, he is again in possession of a firearm (and again in possession of an extended magazine). This conduct has established that he cannot comply with release conditions in the community. For the reasons set forth below, the government submits that the defendant should be held without bond pending trial to ensure the safety of the community.

## **Procedural History and Applicable Authority**

At the initial appearance on October 24, 2019, before Magistrate Judge Harvey, the government orally moved for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) (involving firearm or other dangerous weapon), 18 U.S.C. § 3142 (d)(1)(A)(iii) (on probation or parole), and 18 U.S.C. § 3142 (f)(2)(B) (serious risk of obstruction of justice / threat to witness) of the federal bail statute. The Court set a detention hearing for Monday, October 28, 2019.

On October 23, 2019, the grand jury returned a three-count indictment and an arrest warrant was signed by Magistrate Judge Harvey. On October 24, 2019, Defendant Harris was arrested on the outstanding arrest warrant and appeared before Magistrate Judge Harvey for his initial appearance.

The government contends that the defendant is a danger to the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In an indicted case at a detention hearing, the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In light of the facts and circumstances in this case and the defendant's history and characteristics, the government asks that the Court conclude that there is no condition or combination of conditions that would assure the safety of the community. Therefore, Defendant Harris should be detained. *See* 18 U.S.C. § 3142(e)(1).

## **Nature and Circumstances of the Offenses Charged**

On July 24, 2019, officers from the Metropolitan Police Department (MPD) responded to 4647 Hillside Road, SE, Washington, D.C., in response to a report of sounds of gunshots. On scene, MPD located four 9mm shell casings in the area where the gunshots had been detected. A concerned citizen subsequently provided law enforcement with video footage that captured the July 24, 2019, shooting.

On August 15, 2019, an MPD detective met with Officer Robert Watlington and Richard Willis of the MPD Intelligence Unit. Both Officer Watlington and Willis have previous patrol

experience in which they routinely patrolled the 4600 block of Hillside Road Southeast as part of their daily patrol duties. Further as part of their Intelligence Unit responsibilities both officers have knowledge of individuals and areas in which these individuals frequent, to include the 4600 block of Hillside Road Southeast. Officer Watlington and Officer Willis were asked to view the video in an effort to identify the individual firing the handgun. Once the detective displayed the video to the officers, both Officer Watlington and Willis immediately advised the detective that they both recognized the individual and knew him to be Demontra Harris. Both officers stated that they have had numerous contacts with Harris over the course of the last few years. Officer Watlington and Harris also advised that as part of their duties the typically observe Harris in the 4600 block of Hillside Road Southeast at least a few times per week.

Screengrabs from the video footage capturing the offense include:







On July 26, 2019 – just two days after the July 24, 2019, shooting where Harris was later identified based on the video capturing the offense – Witness-1 reported that Harris had brandished a black firearm with an extended magazine at her and threatened to kill her.  The firearm described by Witness-1 was consistent with the firearm captured on the video of the July 24, 2019, shooting.

On September 8, 2019, at approximately 8:55 p.m., MPD responded to a call for service for a person with a weapon.  A witness reported to MPD that it had observed Witness-1 (referenced above) brandish a black firearm during an argument.  MPD entered Witness-1's residence to speak with her and observed a firearm in plain view, on top of the kitchen cabinet over the sink.  The firearm was a Glock 17 Gen4 9x19 pistol (Serial No. VXF594).  The firearm contained a large capacity magazine.  *See* Exh. A (Photographs of Firearm, extended magazine, and cartridges).

The firearm that was recovered from the residence on September 8, 2019, and the four shell casings that were recovered from the July 24, 2016, shooting scene, were submitted to a firearms examiner for further evaluation.  The firearms examiner microscopically examined the casings recovered from the scene of the shooting and was able to conclude that the four casings had been fired from the 9 mm pistol that was recovered from the residence on September 8, 2019. Additionally, records regarding the original purchase of the firearm recovered on September 8, 2019, indicate that the firearm was purchased by a female who was previously in a relationship with Defendant Harris.

During the course of the investigation, law enforcement obtained a warrant for Defendant Harris's buccal swab (in order to conduct DNA testing on the evidence recovered in the

investigation). The swab was taken from Defendant Harris on October 18, 2019. The following day, Witness-1 reported that Harris had threatened to kill the witness if Harris got locked up as a result of Witness-1. Witness-1 relayed specific information from Harris that would only have been known if Witness-1 had in fact communicated with Harris (specifically, Witness-1 advised that an FBI officer has taken a swab from Harris at his probation office). Harris's threat to Witness-1 was intended to prevent Witness-1 from testifying in an official proceeding.

As set forth fully above, the first factor, the nature and circumstances of the offenses charged, clearly weighs in favor of detention. Here, the defendant has been charged with unlawfully possessing a firearm with an extended magazine on two separate occasions. On both occasions, he is alleged to not only have carried the firearm on his person, but to have used the firearm in threatening, assaultive ways. On July 24, 2019, four shots were fired from the firearm; on July 26, 2019, the defendant pointed the firearm at Witness-1 and threatened to kill Witness-1. Additionally, upon learning that he was the subject of an investigation, Harris then threatened to kill a witness the next day. This conduct raises serious concerns about what violent, threatening, or assaultive conduct Defendant Harris might engage in if he were released in an effort to impede the investigation into the charges in this case. The nature of these offenses therefore weighs strongly in favor of detention.

### **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is quite strong. As set forth above, video captures the defendant discharging the weapon on July 24, 2019. Two law enforcement officers who are familiar with the defendant were able to identify him in the video. That identification is

corroborated by the defendant's actions two days later (where he brandishes a black firearm with the same extended magazine at Witness-1). The identification by the officers is further corroborated by the fact that the firearm has been recovered and was recovered in the residence of Witness-1, with whom Defendant Harris has a relationship with. Additionally, the firearm that was recovered was originally purchased by another person who Defendant Harris was in a relationship with (providing an additional connection of Harris to the firearm).

### Defendant Harris's History and Characteristics

The third factor, the history and characteristics of the person, similarly weighs in favor of detention. On October 16, 2018, Defendant Harris was arrested for possessing a Glock 40 caliber firearm, with a magazine that had a 31 cartridge capacity. This conduct occurred in the very same neighborhood where the July 24, 2019, shooting occurred. Defendant entered a guilty plea on January 7, 2019 and was sentenced on March 11, 2019 (Case No. 2018 CF2 15308). Defendant was placed on supervised probation in that case and yet less than 5 months later, he is observed on video discharging another Glock with an extended magazine in the same residential neighborhood. Although the D.C. Superior Court conviction is his only adult conviction, the information on pages 3-4 of the defendant's Pretrial Services Report raise additional concerns regarding the defendant's history and characteristics. Additionally, less than five months after being placed on supervision following his Superior Court gun conviction, he not only was in possession of a firearm, but he was using the firearm in threatening and assaultive manner. This factor also weighs in favor of detention.

**Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offenses involve the defendant's possession of a loaded firearm, despite being legally barred from such possession. The firearm possessed by Defendant Harris included an extended magazine that poses a heightened danger, as it would allow the defendant to discharge numerous rounds without having to reload the magazine. The underlying facts and circumstances of the charged offenses demonstrate the danger the defendant poses to the community: discharging the firearm four times in a residential neighborhood with numerous civilians present, and just days later brandishing the firearm and threatening to kill another civilian. Even more concerning is that the defendant made threats to a witness in an effort to impede the investigation into his criminal conduct. The defendant's criminal history, non-compliance on supervision, and now, possession of and use of a loaded firearm, overwhelmingly demonstrate that he is a danger to the community. This factor, as with the three prior factors, weighs in favor of the defendant being held without bond pending trial.

**There is No Condition or Combination of Conditions that Would Ensure Defendant Harris's Compliance with Court-Ordered Release Conditions**

At the time of the instant offense, Defendant Harris had been on supervised probation for less than five months. The recent offense conduct – including the possession of a loaded firearm on two separate occasions – appears to be conduct that has escalated (as on both occasions he used the firearm in a threatening, assaultive manner). The fact that Defendant Harris obtained a second Glock with an extended magazine (after being arrested and pleading guilty to possessing a very similar weapon), further rebuts any argument that he could be released in the community and be expected to comply with any release conditions. The defendant's inability to comply with the

9

terms of his supervised probation, strongly supports the government's argument that he will continually circumvent the Court's efforts to reasonably control his behavior through conditions of release and keep the community safe.

### Conclusion

The Court should grant the government's motion to detain Defendant Harris pending trial because he has demonstrated that he is a danger to the community.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

By: _____/s/_____
Laura Crane
D.C. Bar No. 992454
Assistant United States Attorney
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
Telephone: (202) 252-7667
E-mail: Laura.Crane@usdoj.gov

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Mary Petras, via the Electronic Case Filing (ECF) system, this 25th day of October, 2019.

_____/s/_____
LAURA CRANE
Assistant United States Attorney

EXHIBIT A



