## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 19-358 (RC) |
| DEMONTRA HARRIS | ) | |

## MOTION TO REVOKE ORDER OF DETENTION

Pursuant to 18 U.S.C. § 3145(b), Demontra Harris, by and through counsel, respectfully moves this Court to revoke the order directing that Mr. Harris shall remain in custody during the pendency of his case.  Significant factors supporting revocation of the detention order include the nonviolent nature of the charges pending against Mr. Harris, a background indicating that Mr. Harris is not a danger to the community, his employment history, and the overwhelming evidence indicating that Mr. Harris will appear in court if released.  These factors, along with other factors, indicate that Mr. Harris should no longer be incarcerated while his case remains pending.  Because Mr. Harris is neither a danger to the community nor a flight risk, in accordance with 18 U.S.C. § 3142, he must be released.

## Background

On October 23, 2019, a grand jury returned an indictment against Mr. Harris in connection with the instant case.  The indictment charges Mr. Harris in Counts One and Two with unlawfully possessing a firearm and ammunition after having been previously convicted of a crime that is punishable by imprisonment for a term exceeding one year.[1]  It appears that these counts allege that the same firearm was possessed by Mr. Harris on two separate days within the same week.  Count Three of the indictment charges Mr. Harris with witness tampering.[2]  Mr. Harris first

---

[1] In violation of 18 U.S.C. § 922(g)(1).
[2] In violation of 18 U.S.C. § 1512(b)(1).

appeared in the United States District Court in connection with the indictment on October 24, 2019.  This initial appearance was held before Magistrate Judge Michael G. Harvey.  At the initial appearance, based on the offenses charged in Counts One and Two, the government requested a detention hearing.  *See* 18 U.S.C. § 3142(f)(1)(E).  While the Bail Reform Act states that ordinarily "[t]he hearing shall be held immediately upon the person's first appearance before the judicial officer," the government sought a continuance of the detention hearing.  *See* 18 U.S.C. § 3142(f). Because of the government's motion for a continuance, the detention hearing was held on October 28, 2019.

At the detention hearing, which was held before Magistrate Judge Deborah A. Robinson, counsel for Mr. Harris discussed the nonviolent nature of the charges pending against Mr. Harris, his limited and nonviolent criminal history, his employment, and Mr. Harris's support network. Despite arguments made by Mr. Harris's counsel, Magistrate Judge Robinson determined that Mr. Harris should be held without bond while his case is pending.

## Argument

It is a well-established principle that criminal defendants should not suffer imprisonment on a charge for which they have yet to be convicted.  *See Stack v. Boyle*, 342 U.S. 1 (1951).  In 1984, Congress enacted the Bail Reform Act to solidify this principle and to ensure that pretrial detention is utilized in only the rare cases in which community safety and flight are serious concerns.  In passing the Act, Congress surely did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses.  Rather, Congress intended to reserve pretrial detention for only "a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons."  S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189.  When implementing

the provisions of the Bail Reform Act, courts have recognized that the Act clearly favors release over pretrial detention. *See United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985); *see also United States v. Salerno*, 481 U.S. 751, 755 (1987) ("In our society liberty is the norm and detention prior to trial or without trial is a carefully limited exception").

The Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  Even if a court determines that personal recognizance or an unsecured appearance bond will not assure a defendant's appearance in court or protect the safety of the community, the court is not permitted to order the pretrial detention of a defendant without further inquiry.  When personal recognizance or an unsecured appearance bond are not sufficient, the court must consider imposing an alternative condition, or combination of conditions, that will assure the defendant's appearance in court and the safety of the community.  *See* 18 U.S.C. § 3142(c).[3]  Examples of alternative conditions courts may consider imposing include employment or educational requirements, travel restrictions, stay away orders, a specified curfew, or a condition that the defendant refrain from the use of any controlled substance.  *See* 18 U.S.C. § 3142(c)(1)(B).

Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition, or combination of conditions, can assure the defendant's

---

[3] When imposing an alternative condition, or combination of conditions, the court must select the "least restrictive" condition(s).  *See* 18 U.S.C. § 3142(c)(1)(B).

appearance or ensure the safety of the community.  18 U.S.C. § 3142(e).  When no rebuttable presumption applies, as is the case here, the Bail Reform Act strongly favors release.[4]

When evaluating factors which are relevant in determining whether Mr. Harris should be released or detained, it is clear that Mr. Harris is not part of the limited group of people for whom the Bail Reform Act contemplates being detained pending trial.

1.      *Community Safety*

The best way to assess whether Mr. Harris is a danger to the community is to evaluate his personal history and determine whether that history indicates that his release will pose a danger to the community.  The court must exercise extreme caution when making pretrial release determinations based on allegations relating to the charged offense.  As noted above, criminal defendants should not suffer imprisonment on a charge for which they have yet to be convicted. *See Stack v. Boyle*.  Additionally, the Bail Reform Act plainly states that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j). When examining Mr. Harris's history and characteristics, it is abundantly evident that Mr. Harris is not a danger to the community.[5]  According to Mr. Harris's pretrial services report, it appears that he has only one prior adult felony conviction.  Significantly, this sole prior adult conviction relates to a nonviolent offense for which Mr. Harris received a two year probationary sentence.

---

[4]  Even in cases where a rebuttable presumption applies, the defendant's burden of overcoming the presumption "is not a heavy one to meet."  *See United States v. Dominquez*, 783 F.2d 792, 707 (7th Cir. 1986).  All that is required is the production of some evidence "to suggest" that he is neither dangerous nor likely to flee if released.  *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *see also United States v. Miller*, 625 F.Supp. 513, 519 (D. Kan. 1985) (describing the burden as one merely requiring a defendant "to offer some credible evidence contrary to the statutory presumption").

[5] The type of factors the court should consider when assessing a defendant's history and characteristics include criminal history, family ties, length of residence in the community, and employment record. *See* 18 U.S.C. § 3142(g)(3).

Mr. Harris has strong family support and significant family ties to the local community.[6] Mr. Brown has two children, a two-year old girl and a ten-month old boy, who reside in the District of Columbia.  Other family members who live in the Washington, D.C., metro area include his mother, father, brother, sister, nephews, nieces, grandmother, grandfather, aunts, uncles, and cousins.  Mr. Harris has resided in the Washington, D.C., metropolitan area for his entire life, and Mr. Harris had two jobs at the time of his arrest.  Mr. Harris's primary employment was a full-time job as a valet parking attendant for Atlantic Services.  Mr. Harris worked for Atlantic Services for about six months.  Undersigned counsel recently spoke with a representative at Atlantic Services who verified Mr. Harris's employment.  The representative further stated that Mr. Harris's job will remain available to him for approximately sixty days.  Mr. Harris was also employed at the time of his arrest as a part-time overnight stocker at Safeway.

While Mr. Harris is presumed innocent, he is charged in the instant case with nonviolent offenses.  The two firearm possession charges relate to conduct that allegedly occurred three months prior to Mr. Harris being charged and arrested in this case.  Moreover, information provided by the government reveals that a different individual was arrested on September 8, 2019, for possessing the same firearm that Mr. Harris is now accused of possessing.  This other person was charged in the Superior Court for the District of Columbia with Carrying a Pistol Without a License, in violation of 22 D.C. Code § 4504(a).  A police officer's sworn statement in connection with this charge indicates that witnesses observed the defendant in the Superior Court case "holding a black firearm."  The Superior Court case is currently pending action by the grand jury.

    2.    *Flight Risk*

---

[6] A letter of support from Mr. Harris's parents is attached as exhibit 1.

As with the issue of dangerousness, there is no basis for detaining Mr. Harris due to any concern that he will not appear in court when his appearance is required.[7]  Mr. Harris has never been convicted for failing to appear in court or for escaping from any facility (including even walking away from a halfway house).  The Pretrial Services Agency report alleges that Mr. Harris is on probation at the present moment.  The report does not indicate that his probation in this case was ever revoked.  The report states that D.C. Probation and Parole records indicate that Mr. Harris last reported within a few days of his arrest in the instant case and, with regard to drug tests, Mr. Harris "has continually tested negative."  *See* Pretrial Services Report at 3.

Mr. Harris's strong ties to the local community support his release.  His employment, family circumstances, and lifetime residence in the Washington, D.C., metropolitan area are strong indicators that Mr. Harris will not flee.

### 3.    *Appropriate Release Conditions for Mr. Harris*

For the reasons discussed in this motion, pursuant to 18 U.S.C. § 3142(b), Demontra Harris requests that this Court release him on personal recognizance because release on personal recognizance is sufficient for assuring the safety of the community and Mr. Harris's appearance in court.  In order to comply with the Bail Reform Act's directive that only the "least restrictive" conditions be imposed, Mr. Harris submits that no other release conditions are appropriate. However, if this Court believes that more restrictive release conditions are warranted, Mr. Harris suggests that he be ordered to live with his parents and maintain his full-time employment with Atlantic Services.  While the defense believes no further conditions are necessary, there are various additional conditions that are available to the court.  For example, the court can order Mr. Harris

---

[7] Magistrate Judge Robinson's Order of Detention Pending Trial (ECF No. 9) indicates that Judge Robinson agrees with the defense on this point.

to be released into Pretrial Services' High Intensity Supervision Program (HISP)[10] or it can order Mr. Harris's location to be monitored by a GPS device.  Regardless of the imposed conditions of release, Mr. Harris assures this Court that he will comply with all conditions of release, including the condition of refraining from criminal activity, if he is released from custody.

WHEREFORE, for these reasons and any such reasons that shall appear to the Court, the defendant, Demontra Harris, respectfully requests that his motion be granted.

Respectfully Submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
TONY W. MILES
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

---

[10] This program requires defendants to report to Pretrial Services frequently, including one in person visit each week, and the program requires defendants to adhere to a curfew which is electronically monitored.