**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  19-358 (RC) |
| | : | |
| DEMONTRA HARRIS, | : | Re Document No.:     60, 61, 62 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND MOTIONS FOR DISCLOSURE**

## I. INTRODUCTION & BACKGROUND

Defendant Demontra Harris is charged with unlawful possession of a firearm after a previous felony conviction, assault with a dangerous weapon, and possession of a firearm during a crime of violence.  Superseding Indictment at 1–2, ECF No. 39.  Mr. Harris was arrested on October 24, 2019.  Min. Entry (Oct. 24, 2019).  After the arrest, a Washington D.C. Metropolitan Police Department ("MPD") detective and a Federal Bureau of Investigation ("FBI") Special Agent interviewed Mr. Harris for approximately one hour.  *See* Govt Resp. Def.'s Mot. Suppress Statements ("Govt Opp'n") at 1, ECF No. 64; Def.'s Mot. Suppress Statements ("Def.'s Mot.") at 1–2, ECF No. 60.  The interview was preserved on videotape, which the Court has reviewed. *See* Govt Opp'n Exhibit A, ECF No. 64-1.  After some general questions (mainly about his employment and his probation), Mr. Harris was verbally advised of his *Miranda* rights, *see* Govt Opp'n at 4; Def.'s Reply to Govt Resp. to Mot. Suppress ("Def.'s Reply") at 4, he stated he understood those rights, and he signed documentation waiving those rights.  *See generally* Interrogation Video, 11:50-19:15; *see also* Govt Supp. to Opp'n to Suppress Exhibit A ("Harris Warning As To Your Rights"), ECF No.74-1.

Mr. Harris now argues that during the interrogation the "relentless questioning placed [him] in a position where his will was overborne."  Def.'s Mot. at 3.  He also argues that his waiver of his *Miranda* rights was involuntary and uninformed and that his statements were the result of coercion.  Def.'s Mot. at 2–3; Def.'s Reply at 3–8, ECF No. 65.  As a result, Mr. Harris now seeks to suppress the statements he made during the interrogation as violative of his rights under the Due Process Clause and *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See* Def.'s Mot. at 1–4; Def.'s Reply at 3–8.  He also contends that he is entitled to a suppression hearing to determine whether his statements were voluntary.  Def.'s Mot. at 4.  The government opposes this motion.  *See* Govt Opp'n. [1]

Mr. Harris has also filed two motions for disclosure, one requesting disclosure of the identities of confidential informants and the other requesting disclosure of "jailhouse informants."  Def.'s Mot. Disclose Identities of Each Confidential Informant ("Def.'s Mot. Disclose"), ECF No. 61; Def.'s Mot. Immediately Disclose Jailhouse Informants ("Def.'s Mot. Jailhouse Informants"), ECF No. 62.  The government opposes these motions.  *See* Govt Response Def.'s Mots. ("Govt Resp."), ECF No. 70.  For the reasons detailed below, Mr. Harris's Motion to Suppress Statements and Motions for Disclosure are denied.

---

[1] As a threshold matter, the government points out that Mr. Harris's motion was late filed under the Court's agreed upon briefing schedule.  Govt Opp'n at 1 n.1.  The Court originally designated April 17, 2020 as the briefing deadline for all motions.  *See* Min. Entry (Mar. 4, 2020).  However, Mr. Harris's current attorney did not enter his appearance until November 19, 2020, *see* Notice of Appearance, ECF No. 52, and the Court was notified of Mr. Harris's intent to file this suppression motion.  *See* Min. Entry (Feb. 10, 2021).  Accordingly, the Court will excuse this delay.

## II.  ANALYSIS

### A.  Voluntariness of Mr. Harris's Statements

"A confession is inadmissible as a matter of due process if under the totality of the circumstances it was involuntarily obtained." *United States. v. Reed*, 522 F.3d 354, 358–59 (D.C. Cir. 2008) (quoting *United States v. Bradshaw*, 935 F.2d 295, 299 (D.C. Cir. 1991)).  The totality of the circumstances approach requires a court to consider, among other factors, "the defendant's age and education, the length of detention, whether the defendant was advised of his rights, and the nature of the questioning," *United States v. Murdock*, 667 F.3d 1302, 1305–06 (D.C. Cir. 2012) (internal citations omitted).  For a court to find a statement involuntary, "coercive police activity is a necessary predicate." *Id.* at 167.  A showing of coercive police activity requires "egregious facts," *United States v. Mohammed*, 693 F.3d 192, 198 (D.C. Cir. 2012), that demonstrate intimidating police conduct sufficient to render a defendant's will "overborne and his capacity for self-determination critically impaired," *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).  However, the government still retains the burden of establishing the voluntariness of a confession by a preponderance of evidence. *Reed*, 522 F.3d at 359.

First, the Court should make clear that Mr. Harris does not confess during the interrogation.  The Court's observation of the interrogation is that Mr. Harris denied culpability and said very little else.  The government has since clarified that it intends to introduce just four statements from the interrogation, all of which are focused on Mr. Harris's general whereabouts and connection to the location where the firearm at issue was recovered.  *See generally* March 26, 2021 Mot. Hr'g ("Hr'g Tr.").  Furthermore, all four statements were made subsequent to Mr. Harris's *Miranda* waiver.  *Id.*  The Court finds that the government meets its burden and agrees

with the government's assertion that "the videotaped interview here provides no facts that could result in a finding that the statements were involuntary." Govt Opp'n at 3–4. The totality of the circumstances show that Mr. Harris's statements were voluntary and not the result of an overborne will as he was read his rights under *Miranda*, he signed a document explicitly waiving those rights, the questioning lasted only about one hour, it was conducted in a calm and conversational fashion, and during questioning "[Mr. Harris] exhibited no signs or emotional or physical distress" and was "responsive" to the officers' questions. Govt Opp'n at 4; *see generally* Interrogation Video, 11:50-19:15.

Mr. Harris argues that his statements were the result of coercive police activity, but he provides insufficient facts to support this assertion. He contends that "his will was overborne" because the officers "suggest[ed] that he would be separated from his young children for many years if he did not promptly confess." Def.'s Reply at 5–8. This type of statement, without more, does not approach the high threshold required for a finding of egregious police activity. The interrogating officers' comments about Mr. Harris's children, while certainly an emotional appeal, do not demonstrate evidence of improper coercion. Officers may discuss consequences related to a defendant's children if a defendant is arrested, jailed, or refuses to cooperate. *See, e.g.*, *Janusiak v. Cooper*, 937 F.3d 880, 891 (7th Cir. 2019) ("the police also can talk truthfully about the likely consequences for children"); *United States v. Ponce Munoz*, 150 F. Supp. 2d 1125, 1135 (D. Kan. 2001) ("merely exhorting the defendant to start telling the truth" by "informing [them] . . . that other arrangements would have to be made for the care of [defendant's] child" does not constitute coercion); *cf. Lynumn v. Illinois*, 372 U.S. 528, 530–34 (1963) (finding statements by police rose to level of coercion when police threatened removal of state aid to defendant's children while defendant was "encircled in her apartment by three police

officers and a twice convicted felon who had purportedly 'set her up.'").  The Court concludes

that based on its review of the video that the officers' references to Mr. Harris's children was not

intended as a threat, but rather a practical discussion about the realities of the federal charges Mr.

Harris faces.[2]

Furthermore, a review of the interview shows a calm conversation between Mr. Harris

and the officers, during which he readily answered questions, and at no point provided any

indication that he was fearful or under duress.  *See Mohammed*, 693 F.3d at 198 (finding no

egregious activity present based on defendant's comfort and eagerness to answer questions

despite an agent lying to the defendant about a positive heroin test and possibly handcuffing the

defendant); *see also United States v. Hughes*, 640 F.3d 428, 438 (1st Cir. 2011) (finding that

where "[t]he tone of the interview was cordial, its length was reasonable, and the defendant was

not deprived of any essentials" a defendant's statements were not involuntary).  Perhaps Mr.

Harris's calm demeanor is due to the fact that, as he indicated at the beginning of the

interrogation, he had previously been through such a custodial interrogation before, possibly

even in the same room.  *See generally* Interrogation Video, 16:00-16:20.  Because the videotaped

questioning shows no coercive action by the MPD detective and FBI Special Agent, the Court

finds that Mr. Harris's statements were voluntary.

---

[2] Mr. Harris also argued in his motion (though did not raise this argument before the Court at the motions hearing) that the Court should find coercion based on the fact that he was interrogated for roughly one hour in "a small windowless room," Def.'s Reply at 5–8.  This argument fares no better.  A lack of coercion has been found in interrogation conditions far more physically uncomfortable than a small, windowless room.  *See e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 386–87 (2010) (finding "no evidence" of coercion when police questioned Defendant in a straight-backed chair for three hours); *United States v. Yunis*, 859 F.2d 953, 966 (D.C. Cir. 1988) (finding that absent other evidence of coercion, Defendant's seasickness and interrogation in an overheated room did not render a confession involuntary).  In light of this precedent, the Court concludes that Mr. Harris's interview environment falls short of what is required to demonstrate coercive police action.

### B.  Informed and Voluntary Waiver of *Miranda* Rights

Mr. Harris argues next that his waiver of *Miranda* rights was involuntary and uninformed.  *See* Def.'s Reply at 7–8.  To overcome a motion to suppress, the government must prove by a preponderance of evidence that a defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent.  *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  The government meets this burden here.

A waiver of *Miranda* rights is voluntary if it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).[3]  A waiver of *Miranda* rights is not "invalid whenever the defendant feels compelled to waive his rights by reason of *any* compulsion," *Connelly*, 479 U.S. at 170 (emphasis added), but instead only when the compulsion "flow[s] from the police," *id.*; *see also Moran*, 475 U.S. at 421 (finding waiver voluntary where the "record [wa]s devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements").  As established above and as clearly set forth in the interrogation video, the government has demonstrated by a preponderance of the evidence that the interrogating officers did not engage in coercive activity.  Thus, the Court finds Mr. Harris's *Miranda* waiver voluntary.

A waiver is knowing and intelligent if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran*, 475 U.S. at 421.  However, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."  *Colorado v. Spring*, 479 U.S. 564, 574 (1987).  Mr. Harris contends that his waiver of *Miranda*

---

[3] The voluntariness inquiry in the *Miranda* rights waiver context mirrors the same due process inquiry the Court has already engaged in above.  *Connelly*, 479 U.S. at 170–71.

rights was neither knowing nor intelligent because he was not given an opportunity to read a hard-copy version of the *Miranda* warnings.  *See* Def.'s Reply at 7.  This argument is without merit.  Oral presentation of *Miranda* rights, as Mr. Harris concedes occurred here, is sufficient to impart to a defendant the knowledge to make an intelligent waiver.  *See U.S. v. Durham*, 556 F. Supp. 2d 141, 151–52 (N.D.N.Y. 2008) (finding *Miranda* warning sufficient when officer read rights to defendant without providing written copy); *Porfilio v. Hubbard*, 11 Fed. App'x. 973, 974–75 (9th Cir. 2011) ("[T]he law does not require a police officer to use a waiver form or to ask explicitly whether the defendant intends to waive his rights.").  Moreover, he *was* given a written copy of his rights and signed that document before answering questions pertaining to those rights - including specifically stating on the record that he understood those rights.  *See* Harris Warning As To Your Rights (indicating that Mr. Harris initialed and checked "yes" to the questions, "[h]ave you read or had read to you the warning as to your rights?" and "[d]o you understand these rights?").  To the extent that he did not read the written rights that were set before him, it is only because he chose not to do so.  *See* Interrogation Video, 15:55-19:15.

Mr. Harris also notes that he "twice hesitated" before waiving his rights.  Def.'s Reply at 7.  But the video makes clear that he decided to go forward with the clear understanding that he could discontinue the questioning whenever he chose.  *See* Interrogation Video, 15:55-19:15.  Without additional circumstances suggesting that defendant failed to understand the provided *Miranda* warning, the slight hesitation exhibited here is insufficient to render his waiver invalid.  *See Berghuis*, 560 U.S. 370 at 381 (requiring "unambiguous invocation of *Miranda* rights"); *Yunis*, 859 F.2d 953 (finding waiver valid despite gap of nine minutes between police initiation of questioning and Defendant's *Miranda* waiver).

Mr. Harris raises no other facts to suggest that he did not understand "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. Indeed, he concedes that the interrogating officers read him his *Miranda* rights, and that he subsequently waived his rights orally and responded to questioning. Def.'s Reply at 7. "An express . . . oral statement of waiver of the right to remain silent or of the right to counsel," as occurred in this case, "is usually strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). In addition, Mr. Harris's response to questioning itself constitutes a waiver. *See Berghuis*, 560 U.S. at 384–86 (finding "implicit waiver" of *Miranda* rights when the defendant responded to questioning without a lawyer present after being read his rights); *Mitchell v. U.S.*, 434 F.2d 483, 487–88 (D.C. Cir. 1970) ("That appellant did speak when he knew he was not required to do so . . . is a factor to be considered."). Accordingly, the Court declines to suppress the statements Mr. Harris made during this interrogation.

## C. Availability of an Evidentiary Suppression Hearing

Mr. Harris has requested an evidentiary suppression hearing to determine whether his statements were voluntary and informed. Def.'s Mot. at 4. Suppression hearings, however, are only required where the question of whether to suppress evidence hinges on the resolution of a disputed material fact. *United States v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008) ("[T]he right to an evidentiary hearing . . . turns on whether the district court needed to resolve any disputes of material fact to decide [defendant's] suppression motion."). The Court concludes based on the evidence before it—including a complete videotape of the interrogation in question—that Mr. Harris has not alleged any egregious activity on the part of the interviewing officers sufficient to warrant further review into whether his statements were in fact voluntary, and that Mr. Harris has

not raised any facts suggesting that his waiver was uninformed.  Accordingly, Mr. Harris's

request for an evidentiary suppression hearing to be held prior to trial is denied.

### D.  Motions for Disclosure

#### 1.  Confidential Informants

Mr. Harris argues that "a review of the materials . . . reveals that an important source of

information used by law enforcement in gathering information may have been derived from

confidential informants."  Def.'s Mot. Disclose at 1.  The government, however, states that no

such confidential informants exist.  Instead, the government asserts that there were four

witnesses who identified Mr. Harris "in a video of the July 24, 2019, shooting," Govt Resp. at 2,

and that they have already disclosed the names of all but one of those witnesses, *id.*

Furthermore, the Government has since confirmed that the remaining witness name will be

disclosed today.  *See* Hr'g Tr.  Consequently, given that this issue appears to have already been

resolved between the parties, Mr. Harris's request is denied.

#### 2.  Jailhouse Informants

Mr. Harris further requests disclosure of "government . . . sponsored or monitored

contacts with the defendant."  Def.'s Mot. Jailhouse Informants at 2.  Because the government

"is unaware of what 'potential informants' the defendant may be referring to and is not in

possession of any information that would be responsive to such a request," Govt Resp. at 4, this

request will also be denied.

### III.  CONCLUSION

For the foregoing reasons, Mr. Harris's Motion to Suppress Statements (ECF No. 60) and

Motions to Disclose (ECF No. 61 & 62) are **DENIED**.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 26, 2021                                                    RUDOLPH CONTRERAS
                                                                          United States District Judge